# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**MAURICE HAMMOND**                                                                   **PETITIONER**

v.                            **CRIMINAL CAUSE NO.1:08CR131-LG-RHW-1**
                                  **CIVIL CAUSE NO. 1:11CV330-LG-RHW**

**UNITED STATES OF AMERICA**                                **RESPONDENT**

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO VACATE, SET ASIDE OR
## CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

**BEFORE THE COURT** is Maurice Hammond's Motion [111] to Vacate, Set Aside, or Correct Sentence pursuant to Title 28, United States Code, Section 2255. The Government and Hammond's trial counsel have filed responses in opposition to the Motion, and Hammond has filed a reply. Upon reviewing the submissions of the parties and the applicable law, the Court finds that Hammond's Section 2255 Motion should be denied without an evidentiary hearing.

## FACTS AND PROCEDURAL HISTORY

The charges against Hammond arose out of claims for disaster assistance that he filed with the Federal Emergency Management Agency (FEMA) and the Small Business Administration in which he claimed that his primary residence at the time of Hurricane Katrina was 118 North Hughes Street, Poplarville, Mississippi. On May 15, 2009, a jury found Hammond guilty of one count of filing a false claim with a Government Agency in violation of 18 U.S.C. § 287, two counts of making a false statement to a Government agency in violation of 18 U.S.C. § 1001, one count of stealing Government funds in violation of 18 U.S.C. § 641, and four counts of wire

fraud in violation of 18 U.S.C. § 1343. (Verdict, ECF No. 57). He filed a Motion for Judgment of Acquittal and a Motion for a New Trial, which were denied. (Order, ECF No. 65). On August 18, 2009, Hammond was sentenced to thirty months imprisonment and three years of supervised release. (Am. J., ECF No. 78). He was also ordered to pay an $800 special assessment and restitution in the amount of $29,438.39. (*Id.*)

Hammond appealed the conviction and sentence. The United States Court of Appeals for the Fifth Circuit affirmed the judgment of this Court. *United States v. Hammond*, 383 F. App'x 437, 440 (5th Cir. June 22, 2010). Hammond filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on January 10, 2011. *Hammond v. United States*, 131 S. Ct. 952 (2011). He then filed the present Motion on August 25, 2011. (Mot., ECF No. 111).

## DISCUSSION

When considering a collateral challenge to a conviction and sentence under 28 U.S.C. § 2255, it is well settled that, absent countervailing equitable considerations, a district court may refuse to adjudicate claims previously raised and rejected on direct review. *Withrow v. Williams*, 507 U.S. 680, 720-21 (1993). It is also well settled that a collateral challenge may not take the place of a direct appeal. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991).

If a movant challenging his conviction and sentence pursuant to 28 U.S.C. § 2255 could have raised his constitutional or jurisdictional issues on direct appeal, he may not raise them for the first time on collateral review unless he shows cause for

his procedural default and actual prejudice resulting from the error or that the constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* at 232. To satisfy the "cause" standard, a movant must "show that some objective factor external to the defense prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). To satisfy the "prejudice" standard, a movant must show that the error he alleges "worked to his actual and substantive disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). However, the procedural bar does not apply to claims that could not have been raised on direct appeal, such as those alleging ineffective assistance of counsel.

Hammond contends that his attorneys provided him ineffective assistance. To prevail on an ineffective assistance of counsel claim, the defendant must prove: (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As explained by the United States Supreme Court:

> To establish ineffectiveness, a defendant must show that counsel's representation fell below an objective standard of reasonableness. To establish prejudice he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).

The Court must be "highly deferential" in conducting this review. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

Hammond first claims that his attorneys provided ineffective assistance, because they failed to raise a good faith defense. Hammond claims that he did not knowingly file a false claim with FEMA. He claims that he informed FEMA that the Hughes Street property was his primary address, because it was the only residence he owned. He bought the residence approximately thirty days before Hurricane Katrina made landfall, and he maintains that he continued to reside there.

He alleges that FEMA never provided him with its definition of "primary residence." Specifically, he claims that FEMA never provided him with a document entitled "Applicant's Guide to the Individuals and Households Program," and that this failure is demonstrated by FEMA's failure to obtain his signature on FEMA Form 9069B. Hammond contends that FEMA was required to obtain his signature on Form 9069B in order to provide him with benefits. Hammond asserts that his attorneys asked the Government to provide Form 9069B as well as Form 9069D at trial, but the Government failed to produce them. He claims that the inspectors' damage reports pertaining to his property reflects that Hammond signed these two forms. Hammond argues that FEMA's failure to provide these forms to him establishes that he did not knowingly make a false claim for benefits, because the

failure to produce these forms supports his claim that he was never informed of FEMA's policies or the requirements for obtaining assistance from FEMA. Hammond contends that his trial counsel provided ineffective assistance, since they did not request copies of Form 9069B and Form 9069D from the Government during the discovery period, and because they failed to ask witnesses whether he signed those two forms.

As Hammond's trial counsel, James D. Evans, III,[1] explains in an affidavit, he requested Form 9069B, and it was produced by the Government. Evans also asked the Government to produce Form 9069D, but the Government did not have possession of that form. Evans asserts that he requested and obtained the Applicant's Guide to the Individuals and Households Program from the Government and that he provided that document to Hammond for his review. Evans also points out that Hammond submitted his application via the internet, and therefore, he had access to FEMA's policies through the website.

Evans also states that a good faith defense was asserted on behalf of Hammond at trial. Specifically, he and Joseph P. Hudson presented all available evidence in an effort to show that Hammond did in fact reside at the Hughes Street address at the time when Hurricane Katrina struck.

At trial, Hammond testified that he had lived at the Hughes Street property

---

[1] Hammond's other trial counsel, Joseph P. Hudson, was hospitalized at the time that the affidavit was drafted, and therefore, he did not sign the affidavit. (Aff. 1, ECF No. 124). However, Evans stated that the affidavit was filed with Hudson's consent and permission. (*Id.*)

for about four or five days prior to Hurricane Katrina, despite the fact that the electricity and water were not turned on. (Tr. at 548-49, ECF No. 88). Therefore, to the extent that Hammond may now be arguing that he would not have filed a FEMA claim if he had been aware of its definition of "primary residence," that argument is without merit. Furthermore, Hammond's trial counsel did present arguments to the jury concerning Forms 9069B and 9069D. (*Id.* at 665-66). Specifically, trial counsel argued that the Government had only produced Form 9069B, and that the Government had failed to produce Form 9069D, although there was a reference to Hammond signing that Form in his FEMA file. (*Id.*)

In addition, Dolores Nichols, the FEMA program specialist, testified that the 9069B Declaration and Release was provided to Hammond after he applied for assistance, and that he signed the form. (Tr. 113, 126-27, 153, ECF No. 85). She also testified that this form must be signed before benefits can be paid. (*Id.* at 153). Hammond's trial counsel cross-examined her on this issue and elicited testimony that the form signed at the time of the property inspection is not in paper form, but is submitted to FEMA electronically as a verification by the inspector. (*Id.* at 153-55).

Hammond's trial counsel also informed the Court that only one 9069 form had been produced to the defense during a lengthy bench conference, and the Government represented that it had provided everything to the defense that could be considered exculpatory. (Tr. 272-85, ECF No. 86). The Government also specifically asked Nichols to search FEMA's records for the other 9069 form, but

-6-

there was no such form in its records. (*Id.*) Therefore, Hammond's arguments that his attorneys failed to address the issue concerning the two 9069 forms are contradicted by the trial transcript.

Hammond's argument that his attorneys failed to raise a good faith defense is also contradicted by the transcript. Hammond's attorneys vigorously advocated Hammond's position that he lived at the Hughes Street house when Hurricane Katrina struck. The jury considered the arguments made by Hammond concerning his intent and the issues related to the 9069 forms at trial, and it rejected them.

The second ground raised by Hammond is that his attorneys failed to adequately investigate the charges against him, because they did not subpoena records from FEMA or request an evidentiary hearing.[2] He also claims that his attorneys failed to hire an investigator to verify the validity and authenticity of a FEMA document that requested more information from Hammond, as well as an envelope that reflected that the document could not be delivered to Hammond's address. Hammond claims that this failure to investigate resulted in "FEMA employees not being exposed of their fraudulent misrepresentations," since he claims that this letter was "generated for the specific purpose of incriminating" him. (Memo. 7, ECF No. 112).

---

[2] In this section of his Memorandum, Hammond also complains that the Government failed to give him a property list when they took some of his property during a search of his vehicle, and he claims that the Government utilized photographs that he had taken. However, Hammond does not explain how these issues prejudiced his defense. Therefore, these issues are without merit.

Hammond's trial counsel asserts in an affidavit that the document and envelope were reviewed and discussed prior to trial. However, it was determined that the document and envelope would more likely serve as evidence that Hammond did not live at the Hughes Street address, because mail could not be delivered there.

This strategic decision by Hammond's trial counsel did not prejudice Hammond's defense. In fact, they correctly determined that the evidence could aid in convicting Hammond. Furthermore, these documents would not tend to show Hammond's innocence. Therefore, his arguments regarding these documents are without merit.

Third, Hammond alleges that his attorneys failed to object to the admissibility of evidence and testimony from Mississippi Power and the Poplarville Water Department. He claims that this evidence and testimony should have been excluded, because Hammond had never claimed that the electricity and water were turned on at the house prior to the hurricane.

Hammond's trial counsel correctly determined that there was no basis for objecting to the admissibility of evidence and testimony that Hammond had not turned on the power and water at the house in which he claimed to live. The lack of power and water was relevant to the issue of whether Hammond resided at the house, and Hammond has not pointed to any rules of evidence that would prohibit the admission of these records.

Finally, Hammond asserts that his attorneys failed to submit proper jury instructions to the Court. He explains that his attorneys repeatedly submitted jury

instructions on domicile, despite the fact that the Court told them that domicile was not at issue.  He also argues that his attorneys should have submitted jury instructions concerning materiality and "instructions that required a factual finding to the element of the offense."  (Memo. 9, ECF No. 112).

The Court provided detailed instructions to the jury regarding the elements of the crimes charged against Hammond.  (Tr. 645-50, ECF No. 88).  The Court also provided guidance to the jury as to what would be a material claim.  (*Id.* at 646.)  The submission of instructions concerning domicile to the Court did not prejudice Hammond's defense, because those instructions were not presented to the jury.  Therefore, Hammond's arguments regarding jury instructions are without merit.

Since Hammond has not demonstrated that his trial counsel's performance was deficient or that it prejudiced his defense, his Motion must be denied.

## Evidentiary Hearing

Section 2255 of Title 28 of the United States Code controls whether an evidentiary hearing is required in this case.  The statute provides that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing is unnecessary.  The matters reviewed by the Court conclusively show that Hammond is not entitled to relief.

## Request for Discovery

Hammond requests production of the Applicant's Guide to the Individuals and

Households Program, Form 9069B, Form 9069D, the arrest report and any supplements, the original envelope that was marked undeliverable, the letter from FEMA dated October 17, 2005, and the trial transcript.

The Applicant's Guide and Form 9069B were provided to Hammond's defense during discovery. (Aff. 2 (¶4-5), ECF No. 124). As explained previously, the Court ordered the Government to produce Form 9069D and to search its records for that document, but no such document has ever been located. The Court cannot require the Government to produce a document that it does not have. Furthermore, these documents will not assist Hammond in establishing ineffective assistance of counsel, since the arguments related to these documents were presented to the jury at trial and were rejected.

A copy of the October 17, 2005, letter is already in Hammond's possession, since he attached it as an exhibit to his Affidavit. (Aff., Ex. 5, ECF No. 113-5). Furthermore, as explained previously, the letter and the envelope marked undeliverable were immaterial to Hammond's defense, and actually may have aided in his conviction. Therefore, the production of these documents will not assist Hammond in demonstrating ineffective assistance of counsel.

Hammond seeks the arrest report and any supplements in an effort to demonstrate that no property list was generated upon his arrest. Hammond does not appear to claim that property was not returned to him; rather, he asserts that the Government claimed that it took pictures that were actually taken by Hammond, and he alleges that items were added to his personal FEMA file when it

was later returned to him.  The alleged failure to generate a property list did not prejudice Hammond's defense.  Therefore, Hammond has not demonstrated that these documents will assist him in establishing ineffective assistance of counsel.

Hammond requests the trial transcript, since he believes that it will support his arguments that his trial counsel did not address the Form 9069 issue at trial.  However, the trial transcript actually contradicts Hammond's arguments.

Hammond also requests that interrogatories be submitted to several witnesses.  The proposed interrogatories relate to the same arguments that have been rejected by the Court.

Therefore, all of Hammond's discovery requests are denied.  Nevertheless, if Hammond would like to obtain the trial transcript, he may contact the court reporter in writing in order to request a copy of the transcript, and upon payment, he will be entitled to receive the transcript.  *See United States v. Herrera*, 474 F.2d 1049, 1049 (5th Cir. 1973) (holding that a federal prisoner is not entitled to obtain copies of court records at government expense to search for possible defects).

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Maurice Hammond's Motion [111] to Vacate, Set Aside, or Correct Sentence pursuant to Title 28, United States Code, Section 2255 is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 26th day of March, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE